*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

SEAPORT INLET MARINA, LLC,

                Plaintiffs,

v.

PETER CONNELL, TOM SMITH, WILLIAM MAYFIELD, ROBERT MARSIGLIA, JOHN KOZAK, WILLIAM WALLUS, ERIC FITZPATRICK, DAVID CABALLERO, ANATOLY KOVYARENKO, PATRICK DONNELLY, RON ELEUTERI, WILLIAM BAILEY, PAUL ROWAN, HARRY MIZAHI, ROBERT MERCIER, RUSSEL PASCALE, and LARRY FISHMAN,

                Defendants.

Civil Action No. 17-1908 (FLW)(LHG)

OPINION

---

**WOLFSON, United States District Judge**:

    Presently before the Court is Defendant Ron Eleuteri's ("Eleuteri") motion to dismiss Plaintiff Seaport Inlet Marina, LLC's ("Plaintiff" or "Seaport") Complaint. The Complaint seeks (1) enforcement of the terms of certain contracts entered into by Seaport and the Defendants[1],

---

[1] The term "Defendants" as used herein refers to Defendants Peter Connell ("Connell"), Tom Smith ("Smith"), William Mayfield ("Mayfield"), Robert Marsiglia ("Marsiglia"), John Kozak ("Kozak"), William Wallus ("Wallus"), Eric Fitzpatrick ("Fitzpatrick"), David Caballero ("Cabellero"), Anatoly Kovyarenko ("Kovyarenko"), Patrick Donnelly ("Donnelly"), Ron Eleuteri ("Eleuteri"), William Bailey ("Bailey"), Paul Rowan ("Rowan"), Harry Mizahi ("Mizahi"), Robert Mercier ("Mercier"), Russel Pascale ("Pascale"), and Larry Fishman ("Fishman") collectively. Plaintiff's Counsel has represented to the Court that the dispute between Plaintiff and Defendant Donnelly has been resolved. *See* ECF No. 42 at 2 n.1. However, no stipulation of voluntary dismissal of Defendant Donnelly has been filed with the Court.

1

and (2) a declaration of non-liability to the Defendants for damages sustained by Defendants' boats as a result of a fire at Plaintiff's marina. For the reasons set forth below, Defendant Eleuteri's motion is denied (i) with prejudice as to his argument that the present dispute may not be adjudicated as a declaratory judgment action and (ii) without prejudice as to his arguments based on the interpretation or unconscionability of the contracts' exculpatory clauses, which are premature.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On a motion to dismiss, the Court reviews the Complaint by taking its allegations as true. Plaintiff is a corporation that provides marina services to customers at its marina located in Belmar, NJ, on and adjacent to New Jersey's Shark River. *See* Compl. ¶¶ 6, 51-52, ECF No. 1. Plaintiff's marina services include storing boats, docking boats, boat maintenance and repairs, removing and launching boats into and out of the Shark River, shrink-wrapping, and other winterization services. *Id.* at ¶ 53. The Defendants stored their respective boats at Plaintiff's marina pursuant to the terms and conditions set forth in several agreements and/or work orders.[2] Plaintiff alleges that the agreements and/or work orders entered into by and between Defendants and Plaintiff each contained the following exculpatory clause:

> All facilities are offered with the understanding that the management assumes no liability and that the owner will carry hull and liability insurance. In consideration of the making of this contract, it is hereby stipulated and agreed that the Marina permits

---

[2] Plaintiff alleges that these agreements and/or work orders include winter storage agreements, winter service invoices, summer docking/mooring agreements, winter service work orders, and general work orders. *See* Compl. ¶¶ 57-61. Plaintiff also alleges that these agreements and/or work orders were "oral," "oral and were reduced to writing," or "written." *Id*. at ¶¶ 62-64. On August 15, 2017, complying with instructions from the Court made during the August 11 conference call, Plaintiff supplemented its motion to dismiss with copies of the contracts currently in its possession for Defendants Connell, Smith, Marsiglia, Kozak, Wallus, Fitzpatrick, Caballero, Kovyarenko, Eleuteri, Bailey, Rowan, Mizrahi, Mercier, Pascale, and Fishman. *See* ECF No. 42.

2

> the Owner to berth or moor his boat on Marina property and equipment only on the condition that the Marina provides no security and inspection service and assumes no responsibility whatsoever for the safety of the boat, boats or equipment referred to herein directly or indirectly in contract, tort or otherwise. Furthermore, the Marina will not be liable for any loss or damage for any cause whatsoever, including but not limited to fire, theft, malicious mischief or action of the elements which may arise to said boat, boats or its or their equipment, or to any property of the owner or his guests, including but not limited to cars parked in the Marina or for any consequences thereof. Under the foregoing, it is understood the marina reserves the right to assume control and charge any boat, boats or their equipment for the protection of life and property in abnormal conditions or during catastrophes.

*Id.* at ¶ 65.

On February 14, 2017, a fire occurred while one of Plaintiff's employees was performing shrink-wrapping work on Defendant Connell's boat. *Id.* at ¶ 84. Defendant Connell's boat caught fire and the fire spread to the other Defendants' boats causing varying degrees of damage, up to and including total loss of value. *Id.* at ¶¶ 85-86. Plaintiff alleges that it has no liability to the Defendants for any damages arising out of the February 14, 2017 fire because of the exculpatory clause contained in the agreements and/or work orders. *Id.* at ¶ 100-101.

Based upon these allegations, Plaintiff filed the Complaint on March 22, 2017, seeking enforcement of the exculpatory clause contained in the agreements and/or work orders and a declaration of non-liability. Specifically, Count I requests a declaratory judgment that Seaport is not liable to any of the Defendants for damages to their respective boats arising out of the February 14, 2017 fire. *Id.* at ¶¶ 88-101. Count II seeks an order directing enforcement of the exculpatory clause contained in the agreements and/or work orders. *Id.* at ¶¶ 102-16. The Court has admiralty jurisdiction, as Plaintiff's claims arise from a maritime contract. *See Dominici v. Between the Bridges Marina*, 375 F. Supp. 2d 62, 64-65 (D. Conn. 2005) ("Whether exculpatory clause in [marina's] Winter Storage Contract fully absolves [marina] from all liability for its own

negligence, and if so, whether it is enforceable, implicates this Court's admiralty jurisdiction . . . ."); *In re Pennypacker*, No. 16-1317, 2016 WL 4705535, at *3 (D. Md. Sept. 8, 2016) (contract to shrink-wrap yacht is a maritime contract subject to admiralty jurisdiction).

Defendants Connell, Smith, Mayfield, Marsiglia, Kosak, Wallace, Fitzpatrick, Caballero, Rowan, Mercier, Pascale, and Fishman have answered the Complaint and have filed counterclaims. *See* ECF Nos. 11, 17, 30.[3] In addition, Axis Insurance Company ("Axis"), as subrogee of Defendant Fishman, filed a Complaint in Intervention. *See* ECF No. 32.

On June 18, 2017, Defendant Eleuteri filed the instant motion to dismiss (ECF No. 19), which Plaintiff opposes (ECF No. 36).[4] Defendant Eleuteri's motion sets forth two grounds for dismissal: (1) lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and (2) failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). On August 11, 2017, the Court held a telephonic conference with the parties, at which the Court noted that the law was well-settled that fixed-duration dry or winter storage contracts fell within the Court's admiralty jurisdiction[5], and directed Plaintiff to provide evidence of the existence of the winter

---

[3] Defendant Connell filed counterclaims asserting negligence, breach of bailment, and breach of contract. *See* ECF No. 11. Defendants Smith, Mayfield, Marsiglia, Kosak, Wallace, Fitzpatrick, Caballero, Rowan, Mercier, and Pascale answered jointly and also jointly filed counterclaims asserting negligence, breach of bailment, and breach of contract. *See* ECF No. 17. Defendant Fishman filed counterclaims asserting negligence and breach of bailment obligations. *See* ECF No. 30.

[4] In addition, Defendants Smith, Mayfield, Marsiglia, Kosak, Wallace, Fitzpatrick, Caballero, Rowan, Mercier, Pascale, and Connell and Intervening Plaintiff Axis jointly filed a partial opposition to Defendant Eleuteri's motion. *See* ECF No. 37.

[5] "To ascertain whether a contract is a maritime one, [courts] cannot look to whether a ship or other vessel was involved in the dispute[,] . . . [n]or can [courts] simply look to the place of the contract's formation or performance. Instead, the answer 'depends upon ... the nature and character of the contract,' and the true criterion is whether it has 'reference to maritime service or maritime transactions.'" *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23–24 (2004) (quoting *North Pacific S.S. Co. v. Hall Brothers Marine Railway & Shipbuilding Co.,* 249 U.S. 119, 125 (1919)). *See also Kossick v. United Fruit Co.*, 365 U.S. 731, 735–36, 81 S. Ct. 886, 890, 6 L. Ed. 2d 56 (1961) ("The boundaries of admiralty jurisdiction over contracts—as opposed to torts or

storage contracts referenced in the Complaint. Plaintiff filed a supplemental certification, attaching storage, maintenance and repair agreements between Plaintiff and Defendants Connell, Smith, Marsiglia, Kozak, Wallus, Fitzpatrick, Caballero, Kovyarenko, Eleuteri, Bailey, Rowan, Mizrahi, Mercier, Pascale, and Fishman. After reviewing the supplemental certification, Defendant Eleuteri,

---

crimes—being conceptual rather than spatial, have always been difficult to draw. Precedent and usage are helpful insofar as they exclude or include certain common types of contract: a contract to repair, . . . or to insure a ship, . . . is maritime, but a contract to build a ship is not. Without doubt a contract for hire either of a ship or of the sailors and officers to man her is within the admiralty jurisdiction. . . . The principle by reference to which the cases are supposed to fall on one side of the line or the other is an exceedingly broad one. The only question is whether the transaction relates to ships and vessels, masters and mariners, as the agents of commerce.") (citations and quotations omitted). Accordingly, in determining whether contracts relating to the storage or repair of vessels are "maritime" in nature, courts look to whether the ship in question has "been withdrawn from marine commerce and navigation." *The Hercules Co v. Brigadier Gen. Absolom Baird*, 214 F.2d 66, 69 (3d Cir. 1954). When a vessel has been withdrawn from marine commerce and navigation it becomes "a dead ship, i.e., not a maritime object," and where "the subject matter of the contract [is] a nonmaritime object, there [is] no admiralty jurisdiction." *Id.* at 68. *See also Mullane v. Chambers*, 333 F.3d 322, 328 (1st Cir. 2003) (discussing the dead ship doctrine, under which a ship loses its status as a vessel when its function is so changed that it has no further navigation function, explaining that simply taking a vessel temporarily out of service does not render it a dead ship, and finding no authority for the proposition that the duration and location of a ship's temporary storage takes it out of admiralty jurisdiction).

Applying these principles, courts have consistently found winter storage contracts, and disputes concerning the extent of the exculpatory clauses contained therein, to fall within the federal courts' admiralty jurisdiction. *Fireman's Fund Am. Ins. Co. v. Boston Harbor Marina, Inc.*, 406 F.2d 917, 918-19 (1st Cir. 1969) (contract claim against marina where storage contract provided that marina "will not be liable for loss of or damage to said property under any circumstances including, but not limited to fire, theft, vandalism, water damage and any negligent acts or omissions and notwithstanding any asserted or actual breach of this contract" was within the court's admiralty jurisdiction). *See also Am. E. Dev. Corp. v. Everglades Marina, Inc.*, 608 F.2d 123, 125 (5th Cir. 1979) ("contracts for . . . dry storage [of boats] . . . within admiralty jurisdiction."); *Robert E. Blake Inc. v. Excel Envtl.*, 104 F.3d 1158, 1160 (9th Cir. 1997) (contracts for services to a vessel laid up and withdrawn from navigation, i.e. a "dead ship", are not governed by admiralty law, but services to ships only temporarily dry docked are; "It is the health of the ship at the time the contract is formed that is determinative."); *Omaha Indemnity Co. v. Whaleneck Harbor Marina,* 610 F. Supp. 154, 156–57 (E.D.N.Y.1986) (upholding admiralty jurisdiction over dispute involving vessel stored for the duration of winter because "[a] winter storage contract . . . certainly relates to a ship in its use as a ship"); *Schuster v. Baltimore Boat Sales, Inc.*, 471 F. Supp. 321, 322 (D. Md. 1979) (dispute over winter storage contract of vessel subject to court's admiralty jurisdiction).

5

by letter dated August 16, 2017, withdrew the portion of his motion seeking dismissal of the Complaint pursuant to Rule 12(b)(1). *See* ECF No. 44. Accordingly, this Opinion addresses only Defendant Eleuteri's Rule 12(b)(6) arguments. Defendant Eleuteri's motion contends that Seaport's Complaint fails to state a claim because (1) it seeks a declaration of non-liability for past conduct, and (2) the exculpatory clause is unconscionable and unenforceable as a matter of law.

## II. STANDARD OF REVIEW

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 56 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court may disregard any conclusory legal allegations. *Id.* Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Such a claim requires more than mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct;" instead, the facts must allow a court to reasonably infer "that the defendant is liable for the misconduct alleged." *Id.* at 210-11 (quoting *Iqbal*, 556 U.S. at 678-79).

## III. DISCUSSION

### A. A Declaratory Judgment Action is Permissible Here

6

Defendant Eleuteri first argues that the Complaint fails to state a claim upon which relief can be granted because it improperly seeks a declaration of non-liability for past conduct. Defendant Eleuteri contends that, therefore, the substance of this dispute may not be adjudicated as a declaratory judgement action. *See* ECF No. 19-7 at 16-17. Plaintiff counters that a declaratory judgment action regarding the enforceability of an exculpatory clause in a maritime contract is proper under both the declaratory judgment act and general maritime law. *See* ECF No. 36 at 17-20. The Court agrees with Plaintiff.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a court "[i]n a case of actual controversy within its jurisdiction . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). District courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (internal citations omitted). In exercising that discretion, a district court must act "in accordance with the purposes of the Declaratory Judgement Act and the principles of sound judicial administration." *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005) (citation omitted).

Ordinarily, "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct[,] . . . [n]or is declaratory judgment meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006). *See Gruntal & Co. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993) ("A declaratory judgment is inappropriate solely to adjudicate past conduct."). "There must be a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of a declaratory judgment. The fundamental test is whether the plaintiff seeks merely advice or whether a real question of

conflicting legal interests is presented for judicial determination." *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1170 (3d Cir. 1987). "[T]he threat of legal action may present a real controversy." *Id.* at 1170. Threatened legal action is not an appropriate basis for a declaratory judgment action where "the dispute lacks the immediacy and reality necessary to require a judicial declaration of rights as between the parties," that is, where "it is purely a matter of conjecture whether the defendants have threatened to file suit on the theory on which the plaintiff has requested a declaration." *Ibid*.

Here, Plaintiff's claim for declaratory judgment asks the Court to interpret and enforce the exculpatory provision in its maritime contracts with the Defendants. This presents an immediate and real dispute among the parties warranting the issuance of a declaratory judgment because it asks for adjudication not of past conduct, but of present liability in threatened, imminent litigation. Plaintiff has alleged that "[a] majority of the [Defendants] have already submitted claims to [Plaintiff's insurer] and several have retained attorneys and/or threatened to commence lawsuits seeking damages as a result of the subject fire." ECF No. 1 at 2. Plaintiff has also alleged that the majority of the Defendants' insurers have notified Plaintiff of "their intent to seek subrogation for monies [t]hat will be paid out under policies of insurance issued to the [Defendants] as a result of the subject fire." *Id.* Additionally, as discussed above, many of the Defendants have filed counterclaims. The parties' interests, therefore, are clearly adverse and pertain to present liability, not past conduct. The Court further finds that Plaintiff's declaratory judgment action has the potential to resolve the rights of the parties and would be useful to the parties in this case. In other words, a declaratory judgment regarding the applicability and enforceability of an exculpatory clause in this case may determine whether Plaintiff is excused from liability for the damage to the

8

Defendants' boats. Accordingly, the Court will exercise its "unique and substantial discretion" and allow Plaintiff's claim for a declaratory judgment to proceed.

The Court's holding is consistent with those of other courts in this district in matters pertaining to the contractual rights of the parties to boat storage and insurance contracts. *See Harbour Cove Marine Servs. V. Rabinowitz*, No. 02-1695, 2005 WL 1038957, at *1 (D.N.J. May 3, 2005) (declaratory judgment action initiated by marina seeking a declaration that it was not liable for damages to defendants' boats following a fire caused by the marina's employee); *N. Am. Specialty Ins. Co. v. Diantonio*, No. 14-4019, 2015 WL 790514, at *2 (D.N.J. Feb. 25, 2015) (action by insurer seeking a declaratory judgment that it was not obligated to defend and/or indemnify insured under an insurance policy it issued); *Centennial Ins. Co. v. Lithotech Sales, LLC*, 187 F. Supp. 2d 214 (D.N.J. 2001) (same). Accordingly, Defendant Eleuteri's motion to dismiss on the basis of Plaintiff's inability to bring the present case as a declaratory judgment action is denied with prejudice.

### B. Plaintiff's Arguments Pertaining to Enforceability of the Exculpatory Clause are Premature

Defendant Eleuteri next argues that the Complaint fails to state a claim upon which relief can be granted because the exculpatory provisions included in the alleged agreements and/or work orders are unenforceable against Defendant Eleuteri as a matter of law. *See* ECF No. 19-7 at 17-21. Defendant Eleuteri sets forth two distinct arguments regarding unenforceability: (1) that the exculpatory clause only applies to "berthing" and "mooring" a vessel, not long-term winter storage, and (2) that the exculpatory clause is unconscionable and unenforceable as a matter of law[6] due to the bailor/bailee relationship between Defendant Eleuteri and Plaintiff. *See*

---

[6] Generally, "[w]ith admiralty jurisdiction . . . comes the application of substantive admiralty law." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206 (1996) (internal quotation

9

*id.* Plaintiff argues that the issue of enforceability cannot be resolved at the pleading stage because that issue depends on the factual circumstances surrounding the transaction. *See* ECF No. 36 at 22-23. The Defendants opposing Eleuteri's motion, *see* n. 5, *supra*, agree with Plaintiff that any determination of enforceability is premature. *See* ECF No. 37 at 8-11.

As an initial matter, Defendant Eleuteri's motion to dismiss Plaintiffs' Complaint "as a matter of law" is clearly premature because the parties have not yet had the opportunity to argue which law applies. The parties have not argued choice of law under the challenged contracts, and indeed, the text of any of the challenged contracts was not in the record until the filing of the supplemental certification at the Court's direction, and the complete text of all of the fully-executed, contracts may not yet be before the Court. At least some of the contracts with which the Court has heretofore been presented, including that to which Defendant Eleuteri is alleged to be a party, do not on their faces appear to contain choice of law provisions. *See, e.g.*, ECF No. 42-9 (Plaintiff's winter storage contract with Defendant Eleuteri, attached as an exhibit to the August 15, 2017 O'Donnell Supplemental Certification). Where maritime contracts do not contain choice of law provisions, courts in the Third Circuit "follow the choice of law analysis set forth by the Supreme Court in *Wilburn Boat;* that is, we would apply well established principles of federal admiralty law to resolve this dispute, but if none existed, we would apply state law as the federal rule of decision." *AGF Marine Aviation & Transp. v. Cassin*, 544 F.3d 255, 260 (3d Cir. 2008) n. 4 (citing 348 U.S. at 313, 75 S.Ct. 368). *See Centennial Ins. Co. v.*

---

marks and citation omitted). "The application of substantive admiralty law does not, however, result in the 'automatic displacement of state law.'" *Centennial Ins. Co. v. Lithotech Sales, LLC*, 29 F. App'x 835, 836 (3d Cir. 2002) (citation omitted). A federal court may rely on state law in an admiralty case "so long as it does not conflict with maritime law." *Id.* Therefore, the question of whether an exculpatory clause is unenforceable as a matter of law may rely on both substantive admiralty law and New Jersey state law, a choice of law question not yet addressed by the parties, as discussed below.

*Lithotech Sales, LLC*, 29 F. App'x 835, 836 (3d Cir. 2002) ("With admiralty jurisdiction comes the application of substantive admiralty law. The application of substantive admiralty law does not, however, result in the automatic displacement of state law. State law may provide the rule of decision in an admiralty case so long as it does not conflict with maritime law." (quotations omitted)).

"When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22–23 (2004). In determining whether a dispute is inherently local, the court looks to whether a "maritime contract's interpretation may so implicate local interests as to beckon interpretation by state law." For example, both the United States Supreme Court and the Third Circuit Court of Appeals have concluded that, under this framework, the interpretation of various policy provisions in maritime insurance contracts, implicating issues comparable to those of the winter storage contract exculpatory clauses in this case, are governed by state law. The Supreme Court "applyi[ed] state law to maritime contract[s] for marine insurance because of state regulatory power over [the] insurance industry." *Id.* (describing the holding in *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 313, 75 S.Ct. 368, 99 L.Ed. 337 (1955)).[7] The Third

---

[7] In *Wilburn*, the Supreme Court held:

> [W]e think it plain that [the interpretation of a provision in a maritime insurance contract] has not been judicially established as part of the body of federal admiralty law in this country. Therefore, the scope and validity of the policy provisions here involved and the consequences of breaching them can only be determined by state law unless we are now prepared to fashion controlling federal rules. . . . The whole judicial and legislative history of insurance regulation in the United States warns us against the judicial creation of admiralty rules to govern marine policy terms and warranties. The control of all types of insurance companies and contracts has been primarily a state function since the States came into being.

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 316 (1955).

Circuit, similarly, held that "[b]ecause there is no applicable federal rule governing the construction of the [maritime insurance] Policy at issue in the present case, state law applies." *Royal Ins. Co. of Am. v. KSI Trading Corp.*, 563 F.3d 68, 73 (3d Cir. 2009). *See also Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622, 627 (3d Cir. 1994), *aff'd,* 516 U.S. 199, 116 S. Ct. 619, 133 L. Ed. 2d 578 (1996) (general discussion of same). Because the parties have not briefed the issue, it is unclear whether any party will contend that a provision of admiralty law directly conflicts with otherwise applicable New Jersey state law and therefore governs the winter storage contracts here. The Court, however, has not located any instance in which the interpretation of the coverage provisions of a winter storage agreement or maritime insurance policy has been found to be governed by admiralty law, compared with the several instances identified above in which state law was found to apply.

Even assuming that the choice of law question in this case had been resolved in favor of the application of New Jersey state law, it would be clear that Defendant Eleuteri's motion would be premature before the development of the factual record. "Under New Jersey law, an insurance policy is simply a contract and its provisions should, of course, be construed as in any other contract. In the absence of any ambiguity, the terms of an insurance policy should 'be given their plain, ordinary meaning.'" *Royal Ins. Co. of Am. v. KSI Trading Corp.*, 563 F.3d 68, 73 (3d Cir. 2009) (quotation omitted) (quoting *Zacarias v. Allstate Ins. Co.,* 168 N.J. 590, 775 A.2d 1262, 1264 (2001)). *See also Centennial Ins. Co. v. Lithotech Sales, LLC*, 29 F. App'x 835, 837 (3d Cir. 2002) ("In New Jersey, the terms of an insurance policy, absent ambiguity, should be given their plain ordinary meaning." (quotation omitted)). "Under New Jersey law[, however,] . . . courts must always 'consider all of the relevant evidence that will assist in determining the intent

and meaning of the contract' when making ambiguity determinations."[8] *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 419 (3d Cir. 2013) (quoting *Conway v. 287 Corp. Ctr. Assocs.,* 187 N.J. 259, 901 A.2d 341, 346 (2006)). "'Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity.'" *Mylan*, 723 F.3d at 419 (quoting *Sumitomo Mach. Corp.,* 81 F.3d at 332 (quoting *Atl. N. Airlines, Inc. v. Schwimmer,* 12 N.J. 293, 96 A.2d 652, 656 (1953))). "In aid of interpretation, courts should consider, for example, 'the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct.'" *Mylan*, 723 F.3d at 419 (quoting *Kearny PBA Local No. 21 v. Town of Kearny,* 81 N.J. 208, 405 A.2d 393, 400 (1979)). Accordingly, "courts must consider all relevant evidence to determine if any ambiguity exists" and, "if the contested provisions fall in that gray area," dismissal or "summary judgment is improper." *Mylan*, 723 F.3d at 419. "Federal law is consistent with this approach." *Id.* at 419 n. 8. The Court's ambiguity determination preceding its construction of the clause is thus informed by facts not yet before it. Because Defendant Eleuteri's first argument—that the exculpatory clause applies only to berthing and mooring and not long-term storage of vessels on land—requires construction of the clause, it is premature. *See E.H. Yachts, LLC v. B&D Boatworks, Inc.*, No. 06-164, 2006 WL 3068560, *4 n.3 (D.N.J. Oct. 27, 2006) (finding that interpretation of contract provisions was inappropriate in a motion to dismiss).

---

[8] Traditional rules of contract interpretation under federal law would largely be consistent with the New Jersey state law approach. *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 164 (3d Cir. 2001) ("before we decide whether a contract is ambiguous, we must consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation." (citations omitted).

Turning to Defendant Eleuteri's second argument—that the exculpatory provision is unconscionable and unenforceable as a matter of law— "[b]oth admiralty law and New Jersey law recognize that exculpatory contracts, in certain circumstances, are valid and enforceable." *Olmo v. Atl. City Parasail, LLC*, No. 13-4923, 2016 WL 1704365, *8 (D.N.J. Apr. 28, 2016). *See also Metal Processing, Inc. v. Humm*, 56 F. Supp. 2d 455, 463 (D.N.J. 1999) (interpreting the Supreme Court's decision in *Bisso v. Inland Waterways Corp.*, 349 U.S. 85 (1955), to hold that exculpatory provisions in admiralty contracts are not automatically unenforceable except in certain towage contracts); *Stelluti v. Casapenn Enterprises, LLC*, 203 N.J. 286, 303, 1 A.3d 678, 689 (2010) (New Jersey courts "enforce contracts that contain exculpatory clauses unless such provision proves adverse to the public interest."). *See also Harbour Cove Marine Servs., Inc. v. Rabinowitz*, No. CIV. 02-1695 (RBK), 2005 WL 1630871, at *4 (D.N.J. July 8, 2005) ("[E]xculpatory provisions in admiralty contracts are not automatically unenforceable as violative of public policy.").

The analysis of whether an exculpatory provision is enforceable is fact specific and, accordingly, is inappropriate to decide on a motion to dismiss. *Sw. Sugar & Molasses Co. v. River Terminals Corp.*, 360 U.S. 411, 421 (1959) (affirming the Court of Appeals ruling that "the exculpatory clause here at issue [in a maritime contract] should not be struck down as a matter of law" and emphasizing that "[c]ases are not decided, nor the law appropriately understood, apart from an informed and particularized insight into the factual circumstances of the controversy under litigation. This principle has particular force when the courts are asked to strike down on grounds of public policy a contractual arrangement on its face consensual." (internal quotation omitted)). *See, e.g., Dominici*, 375 F. Supp. 2d at 69-70 ("[A]ny categorical rule prohibiting or permitting the exculpatory clause in [the] Winter Storage Contract is inappropriate. The public

policy concerns with exculpatory clauses are instead best channeled into a fact-specific examination . . . . Given the highly particularized inquiry that therefore must precede any determination of the enforceability of an exculpatory clause, it is inappropriate to decide the issue on a Rule 12(b)(6) motion."); *Pub. Serv. Enter. Grp., Inc. v. Philadelphia Elec. Co.*, 722 F. Supp. 184, 211 (D.N.J. 1989) ("The validity of [an exculpatory] clause also depends on factual circumstances inappropriate for resolution on a motion to dismiss."). Again, the Court finds that it would be inappropriate to attempt to resolve the issue of unconscionability without the benefit of a more complete evidentiary record.

Finally, the Court notes that Defendant Eleuteri's letter of August 16, 2017, requests that the Court issue a decision with regard to the portion of Defendant Eleuteri's motion seeking dismissal on the ground that "the purported contract and its alleged exculpatory provision is not dated nor signed by Defendant [Eleuteri]." ECF No. 44 at 1. This argument, as well as the cases cited in the August 16, 2017 letter, does not appear anywhere in Defendant Eleuteri's opening brief or reply brief. In addition, Defendant Eleuteri did not seek leave to file a supplemental brief to raise this additional argument. Accordingly, the Court will not consider this new argument at this juncture. Even if this argument were properly before the Court, it could not be appropriately decided at the motion to dismiss stage. A cursory review of the contracts submitted by Plaintiff with respect to Defendant Eleuteri reveals that at least one document bearing the exculpatory clause at issue was signed and dated by Defendant Eleuteri. *See* ECF No. 42-9 at 17. Whether this signed contract and/or the unsigned contracts produced by Plaintiff may be enforced against Defendant Eleuteri is a question that would benefit from a more complete evidentiary record.

Accordingly, Defendant Eleurteri's motion to dismiss on the basis of the interpretation or unconscionability of the challenged contracts is denied without prejudice as premature.

## IV. CONCLUSION

For the foregoing reasons, Defendant Eleuteri's motion to dismiss (ECF No. 19) is **DENIED** (i) with prejudice as to his argument that the present dispute may not be adjudicated as a declaratory judgment action and (ii) without prejudice as to his arguments based on the interpretation or unconscionability of the contracts' exculpatory clauses, which are premature.

Dated: September 11, 2017                                /s/  Freda L. Wolfson
                                                         Freda L. Wolfson
                                                         United States District Judge